1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    LUIS PADILLA,
                                              Case No.  20-cv-04597-PJH
8                Plaintiff,

9         v.                                  **ORDER DENYING MOTION TO
                                              DISMISS**
10   CITY OF RICHMOND,
                                              Re: Dkt. No. 18
11               Defendant.

12

13

14        Defendant City of Richmond's ("defendant" or "the City") motion to dismiss came

15   on for hearing before this court on December 9, 2020.  Plaintiff Luis Padilla ("plaintiff")

16   appeared through his counsel, Tashayla Billington.  Defendant appeared through its

17   counsel, Jesse Maddox, Lisa Charbonneau, and Bruce Soublet.  Having read the parties'

18   papers and carefully considered their arguments and the relevant legal authority, and

19   good cause appearing, the court hereby rules as follows.

                                    **BACKGROUND**

21        On July 10, 2020, plaintiff filed a putative collective action complaint alleging a

22   single claim for violation of section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

23   § 207.  Dkt. 1.  On July 13, 2020, counsel for plaintiff filed sixty-one individual consent

24   affidavits pursuant to 29 U.S.C. § 216(b).  Dkt. 7.  On September 8, 2020, plaintiff filed a

25   first amended complaint ("FAC") alleging the same violation of section 7.  Dkt. 16.

26        Plaintiff and the other putative members of this collective action are fire trainees,

27   fire fighters, fire engineer fire captains, fire inspectors, and deputy fire marshals

28   (collectively, "firefighters") employed by defendant.  FAC ¶ 15.  Plaintiff and the

United States District Court
Northern District of California

firefighters are members of the International Association of Firefighters, Local 188 ("Local 188") and the terms and conditions of employment of Local 188 members by the City are governed by a memorandum of understanding ("MOU") agreed to by Local 188 and defendant.  Id. ¶¶ 14, 16.

Local 188 members are assigned work schedules consisting of 48 hours on duty, followed by 96 hours off duty, referred to as the 56-hour workweek.  Id. ¶ 18.  In addition to their base salary, defendant compensates firefighters working a 56-hour workweek with monetary compensation in lieu of paid idle holidays (the "holiday-in-lieu payments"). Id. ¶ 19.  Thus, firefighters are paid for each of the City's thirteen holidays at a rate of twelve hours per holiday and the holiday-in-lieu pay is paid in two annual lump sum payments.  Id.  Additionally, defendant provides monetary compensation in lieu of contributing towards the City's health insurance (the "cash-in-lieu payments").  Id. ¶ 22. Both the holiday-in-lieu payments and the cash-in-lieu payments are treated as wages for the purpose of applicable tax withholdings.  Id. ¶¶ 20, 23.

Plaintiff alleges that defendant suffered or permitted him to work hours beyond the statutory overtime thresholds, triggering defendant's obligation to pay plaintiff overtime compensation as required by the FLSA.  Id. ¶ 25.  Plaintiff further alleges that defendant impermissibly excluded the holiday-in-lieu pay and the cash-in-lieu pay remuneration from the "regular rate" of pay.  Id. ¶ 27.  Defendant also failed to pay plaintiff for cashed out compensatory time off at the "regular rate" of pay as required by 29 U.S.C. § 207(o)(3)–(4).  Id. ¶ 28.

Defendant moves to dismiss plaintiff's claim pursuant to Rule 12(b)(6) only with respect to the holiday-in-lieu compensation.  Dkt. 18.

## DISCUSSION

### A.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that

a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999), superseded by statute on other grounds as stated in In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130 (9th Cir. 2017)); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("[A] court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document." (citation omitted)). The court may also consider matters that are properly the subject of judicial

United States District Court
Northern District of California

1  notice, Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001), and exhibits

2  attached to the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d

3  1542, 1555 n.19 (9th Cir. 1989).

4  **B.    Analysis**

5          Section 7 of the FLSA, codified at title 29 U.S.C. § 207, generally requires

6  employers to pay overtime to their non-exempt employees for hours worked in excess of

7  forty hours in a workweek at a rate that is at least one-and-a-half times the "regular rate"

8  at which he or she is employed.  29 U.S.C. § 207(a)(1).  The "regular rate" must include

9  "all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C.

10 § 207(e).  The statute expressly excludes certain types of compensation, including as

11 relevant here:

12              payments made for occasional periods when no work is
13              performed due to vacation, holiday, illness, failure of the
                employer to provide sufficient work, or other similar cause;
14              reasonable payments for traveling expenses, or other
                expenses, incurred by an employee in the furtherance of his
15              employer's interests and properly reimbursable by the
                employer; and other similar payments to an employee which
16              are not made as compensation for his hours of employment.

17 29 U.S.C. § 207(e)(2).

18          The City, as plaintiff's employer, bears the burden to show that a particular

19 exemption applies.  Idaho Sheet Metal Workers, Inc. v. Wirtz, 383 U.S. 190, 206 (1996)

20 (citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388 (1960)).  Prior Ninth Circuit opinions

21 have held that the FLSA's exemptions "are to be narrowly construed against the

22 employers seeking to assert them."  Cleveland v. City of Los Angeles, 420 F.3d 981, 988

23 (9th Cir. 2005) (quoting Arnold, 361 U.S. at 392).  However, in Encino Motorcars, LLC v.

24 Navarro ("Encino II"), 138 S. Ct. 1134, 1142 (2018), the Supreme Court rejected this

25 interpretation "as a useful guidepost for interpreting the FLSA."  Instead, "[b]ecause the

26 FLSA gives no 'textual indication' that its exemptions should be construed narrowly,

27 'there is no reason to give [them] anything other than a fair . . . interpretation.'"  Id.

28 (second alteration in original) (citation omitted).

United States District Court
Northern District of California

4

Here, defendant argues that section 207(e)(2) of the FLSA provides the relevant exemption from the regular rate that permits it to exclude the holiday-in-lieu pay.  Mtn. at 4.  Defendant advances two arguments regarding the exemption; first, the plain language of the FLSA excludes the holiday-in-lieu pay and second, to the extent that the statutory language is ambiguous, recent Department of Labor ("DOL") guidance confirms that the statute excludes the holiday-in-lieu pay from the regular rate.  Id. at 4–5.

Thus, the court first considers whether the plain language of either the first or third clauses of section 207(e)(2) are ambiguous.  If the statute is unambiguous, then the court's inquiry begins and ends with the statute.  Encino Motorcars, LLC v. Navarro ("Encino I"), 136 S. Ct. 2117, 2124–25 (2016) (citing Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984)).  Conversely, if the statute is ambiguous, then the court must consider DOL's interpretation and determine what level of deference applies to such interpretation.

### 1.    Whether the Plain Language of Section 207 is Ambiguous

#### a.    Section 207(e)(2)—First Clause

The first clause of section 207(e)(2) permits an employer to exclude from the regular rate "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause . . . ."  29 U.S.C. § 207(e)(2).

Both parties contend that the plain language of the first clause supports their argument.  Defendant asserts that the holiday-in-lieu pay is payment "due to" holiday because the amount of plaintiff's holiday pay does not vary due to his absence or overtime work.  Mtn. at 4.  The sole determining factor in the amount of holiday pay is the number of City-recognized holidays per year.  Id.  If the City recognized more or fewer holidays, plaintiff's holiday pay would rise or fall accordingly, regardless of hours of work or work schedules.  Reply at 6.

Plaintiff responds that he works his regularly assigned schedule regardless of any holidays; in other words, whether plaintiff works a holiday is a function of his schedule.

United States District Court
Northern District of California

1    Opp. at 5.  Because of the schedule, the holiday-in-lieu pay is completely divorced from

2    any non-work hours or idle time.  Id. at 6.  According to plaintiff, there is no connection

3    between the holiday-in-lieu pay and any time when no work is performed as required by

4    section 207(e)(2).  Id.

5        The FLSA does not define the terms in section 207(e)(2) and therefore the terms

6    are defined by their ordinary meaning.  Encino II, 138 S. Ct. at 1140 (citing Taniguchi v.

7    Kan Pac. Saipan, Ltd., 566 U.S. 560, 566 (2012)).  Section 7(e)(2) was originally enacted

8    as part of the October 1949 amendments to the FLSA.  Pub. L. No. 81-393, ch. 736, § 7,

9    63 Stat. 910, 914 (1949); see also Regular Rate Under the Fair Labor Standards Act, 84

10   Fed. Reg. 68,736, 68,738 (Dec. 16, 2019) (describing the October 1949 amendments).

11   As defined around the time of enactment the term, "Occasional" means "acting, met with,

12   or occurring now and then; casual; incidental; also, infrequent."  Webster's Collegiate

13   Dictionary 686 (G. & C. Merriam Co. 5th ed. 1942).  "Due to" means "caused by; owing

14   to."  Webster's New World Dictionary 232 (David B. Guralnik ed., 1956).

15       With those definitions in mind, defendant's reading of the statute runs into two

16   hurdles.  First, plaintiff alleges that he works a fire suppression schedule set in advance

17   such that he works 48 hours on duty followed by 96 hours off duty.  FAC ¶ 18.  His

18   periods of non-work are not incidental or infrequent, that is, the 96 hours off duty are not

19   occasional.  Second, the phrase "periods when no work is performed due to . . . holiday"

20   requires that the periods of non-work are caused by or owing to a holiday.  Again,

21   because plaintiff alleges that his periods of non-work, i.e., his 96 hours off duty, are set in

22   advance, it is not immediately obvious that the periods of non-work are attributable to a

23   holiday, as opposed to his schedule.  While the amount of the payment is tied to the

24   number of holidays recognized by the City, the period of non-work is not tied to the

25   holiday.

26       At the same time, plaintiff's interpretation is not entirely supported by the plain

27   language of the statute either.  Plaintiff contends that the holiday-in-lieu pay bears no

28   meaningful connection to non-work hours or idle time.  Opp. at 4.  Yet, the FLSA's

United States District Court
Northern District of California

1  exemption clearly requires a causal connection between the compensation for the period

2  of non-work and a holiday. In that sense, defendant's interpretation of the statute is

3  plausible; the reason the firefighters receive any holiday-in-lieu payment is because they

4  may be required to work on a holiday and the amount of the pay is determined entirely on

5  the number of holidays authorized by the City.

6       This conflicting interpretation indicates that the first clause of section 207(e)(2) is

7  ambiguous as applied to the facts of this case. Several district courts in California have

8  addressed holiday-in-lieu payments in the past decade and those opinions agree that the

9  plain language of the statute is ambiguous. See, e.g., McKinnon v. City of Merced, 2018

10  WL 6601900, at *4 (E.D. Cal. Dec. 17, 2018) (finding that plaintiffs' holiday pay received

11  did not squarely fall in section 207(e)(2)'s exemption).

12       Lewis v. County of Colusa, 2018 WL 1605754 (E.D. Cal. Apr. 3, 2018), is

13  instructive. There, the defendant county made biannual lump-sum holiday-in-lieu

14  payments to safety officers and dispatchers. Id. at *1. The court read the collective

15  bargaining agreement as suggesting that "if a safety officer or dispatcher [did] not work

16  on a holiday, it [was] either because she [was] not scheduled to work on that day or

17  because she decided to take vacation or leave time—in other words, not 'due to' the

18  holiday per se." Id. at *2. "The holiday in-lieu payments, which are the same whether the

19  employee happens to work on the holiday or not, thus bear no real relation to any idle

20  time." Id. (citing 29 C.F.R. § 778.219(a)). The court denied defendant's motion for

21  summary judgment, reasoning that "it is at least as plausible that safety officers and

22  dispatchers are compensated biannually for the inconvenience of working a schedule in

23  which they are not entitled to holidays off as it is that they are for 'occasional periods

24  when' they are 'not at work due to . . . holiday.'" Id. at *3 (alteration in original) (quoting

25  29 C.F.R. § 778.218(a)).

26       Defendant would distinguish Lewis for three reasons. First, defendant asserts the

27  payment structure is not the same as plaintiff's holiday-in-lieu pay benefit. Reply at 16.

28  Second, Lewis relied on the concept of paid idle time in 29 C.F.R. § 778.219(a), which

United States District Court
Northern District of California

1    DOL has since removed from the regulations.  Id.  Third, the City asserts that Lewis relies

2    on Ninth Circuit authority that was overruled by the Supreme Court in Encino II for the

3    proposition that two equally plausible claims must be decided in favor of the employee.

4    Id.

5        Those contentions are unpersuasive.  First, the factual distinctions[1] between this

6    case and Lewis do not detract from the Lewis court's reasoning that "if a [firefighter] does

7    not work on a holiday, it is either because she is not scheduled to work on that day or

8    because she decided to take vacation or leave time—in other words, not 'due to' the

9    holiday per se."  2018 WL 1605754, at *2.  Second, while Lewis relied on the concept of

10   idle time—a concept that has since been omitted from section 778.219—it also construed

11   the statutory phrase "due to" and did not rely solely on the regulatory interpretation.

12   Finally, Lewis determined, on a motion for summary judgment, that if there are two

13   equally plausible contentions, then the FLSA exemption must be construed against the

14   employer.  While that proposition may not survive Encino II, on a Rule 12(b)(6) motion,

15   plaintiff only need allege sufficient facts to plausibly state a claim for relief.

16       In any case, Lewis persuasively demonstrates plaintiff's claim is not foreclosed by

17   the plain language of the statute and the reliance on DOL's interpretation further supports

18   the conclusion that section 207(e)(2) is open to multiple interpretations and, therefore, it

19   is ambiguous.  See Wilson Arlington Co. v. Prudential Ins. Co., 912 F.2d 366, 371 (9th

20   Cir. 1990) ("The test for ambiguity is not complexity, but lack of clarity.").

21       **b.    Section 207(e)(2)—Third Clause**

22       The third clause of section 207(e)(2) permits an employer to exclude "other similar

23

24   _____

[1] Neither party has provided the MOU and the factual issues relating to the MOU confirm
25   that this case is not suitable for resolution at the Rule 12(b)(6) stage.  Even if it had been
     provided at this stage, Amador v. City of Ceres, 2017 WL 3009186, at *3 (E.D. Cal. July
26   14, 2017), counsels against dismissing a case based solely on a memorandum of
     understanding.  There, the district court denied a motion to dismiss based on how the city
27   enforced its compensation scheme in practice, which differed from the terms of the
     memorandum of understanding.  Since plaintiff only needs to allege facts sufficient to
28   plausibly state a claim for which relief may be granted, it is premature at this stage to
     foreclose his claim.

payments to an employee which are not made as compensation for his hours of employment."  29 U.S.C. § 207(e)(2).

Defendant's motion does not explicitly invoke the third clause of section 207(e)(2) as a basis to exclude the holiday-in-lieu pay from the regular rate.  Nonetheless, in his opposition, plaintiff takes the position that defendant's argument that holiday-in-lieu pay may be excluded because it is not compensation for hours worked and does not depend on an employee's hours of employment implicates the third clause.  Opp. at 21–22. Plaintiff argues that the Ninth Circuit's opinion in Flores v. City of San Gabriel, 824 F.3d 890 (9th Cir. 2016), rejected a similar argument made by an employer that cash payments in lieu of medical benefits should be excluded under the third clause.  Id. at 22. In reply, defendant squarely addresses the third clause and argues it applies here because the holiday benefit is an example of payments not made as compensation for hours of employment, i.e., payments for time not worked and reimbursements for business expenses.  Reply at 7.

Flores demonstrates why the third clause is not applicable here.  There, the court relied on DOL's interpretive bulletin, 29 C.F.R. § 778.224(a), for the proposition that to be excludable as "other similar payments," the payments should be similar to the payments specifically described in section 207(e)(2).  824 F.3d at 898; see also id. at 899 (citing Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co., 83 F.3d 292, 295 (9th Cir. 1996) ("The key point is that the pay or salary is compensation for work.")).  Payment due to holiday is specifically described in the first clause of section 207(e)(2).  It would not make sense to apply the generalized third clause when the holiday-in-lieu payment fits squarely in the particularized first clause.  This is especially true when the third clause defines other payments with reference to the first clause.  Put differently, if the holiday-in-lieu payment is within the first clause's exception, then it is necessarily within the third clause.  Conversely, if it is outside the scope of the first clause, then the holiday-in-lieu pay is compensation for work and outside the scope of the third clause.

As currently alleged, the third clause of section 207(e)(2) does not apply to

1   defendant's holiday-in-lieu pay.

2       **2.      Whether <u>Chevron</u> or <u>Skidmore</u> Deference Applies to DOL's**

3           **Interpretation**

4       Defendant argues that if the court finds section 207(e)(2) to be ambiguous, then

5   the court should defer to the DOL's interpretation of that section, as set forth in title 29

6   C.F.R. § 778.219.  Mtn. at 7.  In the alternative, defendant asserts that if the court does

7   not apply <u>Chevron</u> deference to section 778.219, then it should apply <u>Skidmore</u>

8   deference and give the agency's interpretation great respect.  <u>Id.</u> at 8.

9       Whether a court owes deference to an agency's interpretation of a statute varies

10  with the circumstances surrounding the agency's interpretation.  "[C]ourts have looked to

11  the degree of the agency's care, its consistency, formality, and relative expertness, and

12  to the persuasiveness of the agency's position."  <u>United States v. Mead Corp.</u>, 533 U.S.

13  218, 228 (2001) (footnotes omitted) (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 139–

14  40 (1944)).  Additionally, the statute must delegate rulemaking authority to the agency in

15  order to resolve ambiguities in the statute.  <u>See</u> <u>Encino I</u>, 136 S. Ct. at 2125 ("A premise

16  of <u>Chevron</u> is that when Congress grants an agency the authority to administer a statute

17  by issuing regulations with the force of law, it presumes the agency will use that authority

18  to resolve ambiguities in the statutory scheme." (citations omitted)); <u>Marmolejo–Campos</u>

19  <u>v. Holder</u>, 558 F.3d 903, 908–09 (9th Cir. 2009) (en banc) ("[B]efore we apply <u>Chevron</u>,

20  we must conclude that Congress delegated authority to the agency to interpret the statute

21  in question and that the agency decision under review was made with a lawmaking

22  pretense." (internal quotation marks omitted)).

23      The City argues that <u>Chevron</u> deference should apply because the current version

24  of section 778.219 underwent notice-and-comment rulemaking in 2019.  Mtn. at 6–8.

25  Plaintiff contends that <u>Chevron</u> deference should not apply to the "firefighter example" in

26  section 778.219(a)(4).  Opp. at 12.  Plaintiff reasons that the example purports to

27  illustrate application of the remainder of the regulation to a specific scenario and also

28  clarifies the word "forgo," a term used in the regulation but not the statute.  <u>Id.</u>

United States District Court
Northern District of California

As a general matter, the Supreme Court has stated that "a very good indicator of delegation meriting <u>Chevron</u> treatment is express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed."  <u>Mead</u>, 533 U.S. at 229.  In this case, DOL issued a notice of proposed rulemaking on March 29, 2019, 84 Fed. Reg. 11,888, received approximately eighty comments, and issued a final rule on December 16, 2019 (the "2019 Rule"), 84 Fed. Reg. at 68,736, that became effective on January 15, 2020.

While this is a close question, a few reasons suggest that title 29 C.F.R. § 778.219 is an interpretive bulletin and not a formal or informal rule.  In <u>Long Island Care at Home, Ltd. v. Coke</u>, 551 U.S. 158, 172 (2007), the Supreme Court rejected an argument that a DOL regulation interpreting title 29 U.S.C. § 213 was not owed <u>Chevron</u> deference, reasoning in part that "the Department intended the third-party regulation as a binding application of its rulemaking authority."  The Court summarized the relevant considerations as follows:

> Where an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and where the rule itself is reasonable, then a court ordinarily assumes that Congress intended it to defer to the agency's determination.

<u>Id.</u> at 173–74 (citing <u>Mead</u>, 533 U.S. at 229–33).

Unlike the regulation at issue in <u>Coke</u>, DOL's 2019 Rule was not intended as a binding application of rulemaking authority and does not set forth individual rights and duties.  The primary indicator is the introductory statement to part 778, which provides: "[t]his part contains the Department of Labor's <u>general interpretations</u> with respect to the meaning and application of the maximum hours and overtime pay requirements contained in section 7 of the [FLSA]."  29 C.F.R. § 778.1(a) (emphasis added).  It goes on to state, "[t]he Administrator of the Wage and Hour Division will use these interpretations to <u>guide the performance</u> of his or her duties under the Act, and intends the interpretations to be used by employers, employees, and courts to <u>understand</u>

employers' obligations and employees' rights under the Act." Id. (emphasis added).

Significantly, in the 2019 Rule, DOL amended other language in section 778.1 but chose

not to amend the statement in subsection (a) that DOL views its interpretations in part

778 as non-binding on third parties.[2]

Also persuasive, in Flores, the Ninth Circuit recognized that two neighboring

sections—§ 778.224 and § 778.215—are "interpretive bulletin[s] containing an 'official

interpretation[ ] . . . issued by the Administrator on the advice of the Solicitor of Labor, as

authorized by the Secretary." 824 F.3d at 899 n.1 (second and third alterations in

original) (quoting 29 C.F.R. § 778.1); id. at 902 n.2. Other courts of appeals have

likewise concluded that the interpretive bulletins in part 778 are owed only Skidmore

deference. See Chavez v. City of Albuquerque, 630 F.3d 1300, 1308 (10th Cir. 2011)

(applying Skidmore deference to § 778.219(a)); Rodriguez v. Farm Stores Grocery, Inc.,

518 F.3d 1259, 1268 n.5 (11th Cir. 2008) (applying Skidmore deference to § 778.113).

Accordingly, the court declines to apply Chevron deference to DOL's interpretive

bulletin and instead applies Skidmore deference.

Briefly, the court addresses plaintiff's argument concerning Auer/Seminole Rock

---

[2] A further requirement to apply Chevron deference is that DOL "received congressional authority to determine the particular matter at issue in the particular manner adopted." City of Arlington, Tex. v. F.C.C., 569 U.S. 290, 306 (2013). Congress has previously delegated to the Secretary of Labor the authority to promulgate formal or informal rules interpreting specific sections of the FLSA. For example, Congress amended the FLSA in 1974 and as part of that amendment "Congress expressly delegated to the Secretary the broad authority 'to prescribe necessary rules, regulations, and orders' to implement" those amendments. Or. Rest. & Lodging Ass'n v. Perez, 816 F.3d 1080, 1084 (9th Cir. 2016) (quoting Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (1974)). A second example, the Supreme Court has applied Chevron deference to exemptions for executive, administrative, and professional employees under 29 U.S.C. § 213(a)(1). See Auer v. Robbins, 519 U.S. 452, 456 (1997); see also Coke, 551 U.S. at 165 (citing the 1974 amendments as "provid[ing] the Department with the power to fill these gaps through rules and regulations").

These examples demonstrate instances where Congress authorized rulemaking authority. It is not clear, however, that Congress has delegated similar authority to interpret section 7 of the FLSA. See Reich v. Interstate Brands Corp., 57 F.3d 574, 576 (7th Cir. 1995) ("Congress has not delegated to the Secretary of Labor the power to interpret § 7 of the FLSA."). Because the parties have not briefed this issue, the court does not rely on it in arriving at its finding. Rather the court highlights the issue, should defendant pursue this line of argument at a later stage in the litigation.

deference.  In his opposition, plaintiff suggests that the firefighter example in

subsection (a)(4) of section 778.219 should be analyzed under the rubric of

Auer/Seminole Rock deference, see Auer, 519 U.S. 452; Bowles v. Seminole Rock &

Sand Co., 325 U.S. 410 (1945), but he then argues that Auer deference does not apply

because, for example, it contradicts the unambiguous language in the first paragraph of

subsection (a).  Opp. at 11.  As the Supreme Court recently explained in Kisor v. Wilkie,

139 S. Ct. 2400, 2410–11 (2019), Auer/Seminole Rock deference arises when

regulations are "genuinely ambiguous" and because of the ambiguity, the agency

construes its own regulation.  As an initial matter, the court is unpersuaded that section

778.219(a)(4) is an interpretation of section 778.219.  Section 778.219(a) describes

generally when certain payments are excludable under the FLSA and concludes by

stating:

> Such payments may be excluded whether paid out during the
> pay period in which the holiday or prescheduled leave is
> forgone or as a lump sum at a later point in time.  Since it is not
> compensation for work, pay for unused leave may not be
> credited toward overtime compensation due under the Act.
> Four examples in which the maximum hours standard is 40
> hours may serve to illustrate this principle:

29 C.F.R. § 778.219(a) (emphasis added).  As indicated by the phrase "this principle," the

four examples refer back to a principle "under the Act," which indicates that the examples

are interpretations of the FLSA rather than interpretations of an ambiguous portion of the

regulation.

But even if subsection (a)(4) is an agency's construction of its own regulation and

the court found plaintiff's argument persuasive such that Auer/Seminole Rock deference

does not apply, that conclusion would bring the analysis to the same point that defendant

advances in the alternative, that Skidmore deference applies.  Kisor teaches that "when

the reasons for [Auer/Seminole Rock] presumption do not apply, or countervailing

reasons outweigh them, courts should not give deference to an agency's reading, except

to the extent it has the 'power to persuade.'"  139 S. Ct. at 2414 (emphasis added)

(quoting Skidmore, 323 U.S. at 140).  Put differently, if plaintiff prevails on his

Auer/Seminole Rock argument, then the court still must determine whether subsection (a)(4) has the power to persuade under Skidmore.

For that reason, the court turns to the application of DOL's interpretive bulletin to the City's holiday-in-lieu payment and whether DOL's interpretation is persuasive under Skidmore.

### 3. Application of DOL's Interpretation to the City's Holiday-in-Lieu Pay

Skidmore dictates that

> the rulings, interpretations and opinions of [an agency], while not controlling on the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

323 U.S. at 140.

Defendant argues that the "firefighter example" in subsection (a)(4) is nearly identical to the facts of the case. Mtn. at 5–6. Because of the similarity, the regulatory language permits excluding plaintiff's holiday pay from the regular rate. Id.

Plaintiff asserts that the court should not consider the firefighter example because the first paragraph of section 778.219(a) is unambiguous, Opp. at 12–13, and that the firefighter example contradicts the remainder of the regulation, id. at 14–15. According to plaintiff, section 778.219 requires an entitlement to paid leave, forgoing that leave, and a payment of equivalent earning. Id. at 15. The firefighter example purportedly eliminates all three requirements. Id.

In reply, defendant contends that section 778.219 is not contradictory because that section applies regardless of whether an employee works or not. Reply at 10–11.

Title 29 C.F.R. section 778.219(a) states:

> When an employee who is entitled to such paid leave forgoes the use of leave and instead receives a payment that is the approximate equivalent to the employee' normal earnings for a similar period of working time, and is in addition to the employee's normal compensation for hours worked, the sum

14

United States District Court
Northern District of California

1        allocable to the forgone leave may be excluded from the regular
rate.

2   29 C.F.R. § 778.219(a).  Two observations are relevant from the language of the bulletin.

3   First, subsection (a) requires that, to be excludable, the employee must be entitled to

4   paid leave.  Second, the employee must forgo that entitlement.  The word forgo means

5   "to give up the enjoyment or advantage of; do without."  Merriam-Webster Dictionary,

6   https://www.merriam-webster.com/dictionary/forgo (last visited Dec. 9, 2020).  The

7   bulletin is silent on whether the reason the employee forgoes the entitlement is due to the

8   employee's voluntary choice to forgo such leave or because the employer mandates the

9   employee work on a holiday.

10       Applying those observations here, it is not clear from the FAC whether plaintiff is

11  entitled to all City holidays, but it is plausible to infer that he is **not** entitled to holiday

12  leave because the nature of the fire suppression schedule is such that if the shift falls on

13  a holiday, then plaintiff must work the holiday.  See FAC ¶¶ 18–19.  Without facts

14  confirming whether the City's firefighters have an entitlement to holiday leave, it is difficult

15  to say that plaintiff is able to forgo that entitlement.  Rather, the City mandates plaintiff to

16  work on a particular holiday if the fire suppression schedule so requires.  In any event,

17  the fact that the MOU (which might confirm the nature of the holiday-in-lieu pay and leave

18  entitlement) was not attached to the FAC demonstrates that section 778.219(a) may not

19  apply to this case.

20       McKinnon v. City of Merced, 2018 WL 6601900, is instructive.  There, the plaintiff

21  police officers received "pay equal to and in lieu of time off" when a holiday fell on an

22  officer's normally assigned day off or when the officer was scheduled to work on a

23  holiday.  Id. at *2.  In determining whether the holiday pay fell within section 778.219, the

24  court framed the inquiry as "whether an employee scheduled to work on a certain holiday

25  and with no option not to work on that day can be said to have forgone that holiday."  Id.

26  at *5.  The court answered this inquiry in the negative, reasoning that "[w]hether a

27  particular employee will have idle time on a particular holiday is determined by the

28  schedule, not a decision to forgo or not forgo the holiday."  Id.  McKinnon supports the

finding that section 778.219 does not permit the City to exclude the holiday-in-lieu pay. However, McKinnon was issued prior to the 2019 Rule, to which the court now turns.

It is evident that the firefighter example,[3] added in the 2019 Rule, fits the broad contours of this case since it describes employees who work 48-hour shifts followed by 96 hours off duty and the employer provides holiday pay equivalent to the number of recognized holidays.  See § 778.219(a)(4).  Further, DOL intended for the 2019 Rule to overcome the findings of cases such as Hart v. City of Alameda, 2009 WL 1705612, at *3 (N.D. Cal. June 17, 2009), Lewis, 2018 WL 1605754, at *3, and McKinnon, 2018 WL 6601900, at *5–8.  See 84 Fed. Reg. at 68,742 & n.75 (noting that "several courts have nevertheless held that similar forms of 'holiday-in-lieu' payments must be included in the regular rate" and then reasoning that "[c]urrent [DOL] regulations support excluding holiday-in-lieu pay from the regular rate").

DOL's firefighter example is unpersuasive for two reasons.  First, the example assumes that "[a]n employee is scheduled to work a set schedule of two 24-hour shifts on duty, followed by four 24-hour shifts off duty.  This cycle repeats every six days." § 778.219(a)(4).  The example goes on to require that "[d]ue to the cycle of the schedule, employees may be on duty during some recognized holidays and off duty during

---

[3] The example states:

> An employee is scheduled to work a set schedule of two 24–hour shifts on duty, followed by four 24–hour shifts off duty. This cycle repeats every six days.  The employer recognizes ten holidays per year and provides employees with holiday pay for these days at amounts approximately equivalent to their normal earnings for a similar period of working time.  Due to the cycle of the schedule, employees may be on duty during some recognized holidays and off duty during others, and due to the nature of their work, employees may be required to forgo a holiday if an emergency arises.  In recognition of this fact, the employer provides the employees holiday pay regardless of whether the employee works on the holiday.  If the employee works on the holiday, the employee will receive his or her regular salary in addition to the holiday pay.  In these circumstances, the sum allocable to the holiday pay may be excluded from the regular rate.

29 C.F.R. § 778.219(a)(4).

United States District Court
Northern District of California

others . . . ." Id.  By providing for a set schedule and a cycle that repeats every six days and further tying that cycle to working (or not) on a holiday, the firefighter example contradicts section 207(e)(2)'s requirement that an excludable payment is "made for occasional periods when no work is performed."  29 U.S.C. § 207(e)(2); see also 29 C.F.R. § 778.218(b) ("The provision of section 7(e)(2) of the Act deals with the type of absences which are infrequent or sporadic or unpredictable.").

Second, the firefighter example omits any reference to an entitlement to holiday leave.  The preceding three examples all specify that the employee is entitled to either paid vacation or paid holidays.  See § 778.219(a)(1)–(3).  The employees in those examples then forgo the entitled leave.  E.g., § 778.219(a)(1) ("An employee . . . is entitled, under his employment contract, to a week's paid vacation . . . . He forgoes his vacation and works 50 hours in the week in question.").  The firefighter example departs from that construct; it states "[t]he employer recognizes ten holidays per year and provides employees with holiday pay for these days at amounts approximately equivalent to their normal earnings for a similar period of working time."  § 778.219(a)(4).  By omitting any reference to an entitlement and forgoing that entitlement, the example is incongruent with the remainder of subsection (a).

Finally, even if the court were to determine that the example is persuasive, it is not clear that it applies to the facts of this case.  As previously noted, the MOU is not before the court and the court has not determined whether, for example, plaintiff has an entitlement to holiday leave.  Additionally, the firefighter example assumes that "employees may be required to forgo a holiday if an emergency arises" and the holiday pay is "[i]n recognition of [that] fact."  29 C.F.R. § 778.219(a)(4).  Unlike the example, plaintiff alleges that the City sets the fire suppression schedule in advance and any holidays that plaintiff forgoes is not required by "an emergency" but by that schedule.

Next, both parties cite opinion letters that would support their respective positions.  "While opinion letters are normally entitled to a high degree of deference, they are not binding on the court if they are plainly erroneous or are inconsistent with the regulations

United States District Court
Northern District of California

1   they interpret." Imada v. City of Hercules, 138 F.3d 1294, 1297 (9th Cir. 1998) (citing

2   Wash. State Health Facilities Ass'n v. Wash. Dep't of Social & Health Servs., 879 F.2d

3   677, 681 (9th Cir. 1989)).

4          In 1999, DOL issued an opinion letter that stated that an employer could not

5   exclude payments made to firefighters who work 24-hour shifts and receive in lieu of

6   holiday pay equal to 5% of their base pay. See U.S. Dep't of Labor, Wage & Hour

7   Division, Opinion Letter Fair Labor Standards Act (FLSA), 1999 WL 1788163, at *2 (Sept.

8   30, 1999). The letter generally answered the holiday question in the affirmative without

9   discussing at length any reasoning.

10         In 2006, DOL published an opinion letter with similar facts—firefighters worked 24-

11  hour shifts and received holiday pay for nine holidays and two floating days in lieu of

12  being able to take off those days—but arrived at the opposite conclusion of the 1999

13  opinion letter. U.S. Dep't of Labor, Wage & Hour Division, Opinion Letter Fair Labor

14  Standards Act (FLSA), 2006 WL 4512960, at *1 (July 24, 2006). The 2006 opinion letter

15  provides more detail than the 1999 letter, but generally parrots the standard described in

16  section 778.219. See id. at *2.

17         The McKinnon court determined that neither the 1999 nor 2006 opinion letters was

18  persuasive and should not be afforded Skidmore deference. See 2018 WL 6601900, at

19  *5–6. The 1999 letter had virtually no reasoning and the 2006 letter did "not address in

20  any detail what the meaning of 'forgo' should be." Id. at *6.

21         The court finds the McKinnon court's reasoning persuasive. While the 2006 letter

22  discussed in detail the facts surrounding the employer-employee pay arrangement, it

23  restated the standard provided by section 778.219 and then parroted that standard when

24  applying it to the facts outlined in the letter. Similar to the discussion of the firefighter

25  example above, the opinion letter did not grapple with the regularly scheduled nature of

26  the firefighters' schedules or the fact that section 778.219(a) requires an employee to

27  forgo an entitlement and receive compensation for that relinquished entitlement. Nor

28  does the 2006 opinion letter cure the inconsistencies identified above between the

18

United States District Court
Northern District of California

1    firefighter example and the statute.

2        Finally, in its reply, defendant cites DOL's Wage and Hour Division Field

3    Operations Handbook in support of its argument that section 778.219 is reasonable and

4    persuasive.  Reply at 11–12.  This handbook is not persuasive for two reasons.  First,

5    though plaintiff improperly raises the issue in opposition to defendant's request for judicial

6    notice rather than an objection to reply evidence (as discussed below), plaintiff is

7    nonetheless correct that defendant raised the issue of the handbook for the first time in a

8    reply brief.  As a general rule, courts do not consider arguments raised for the first time

9    on reply.  See, e.g., Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised

10   for the first time in the reply brief are waived."); Dytch v. Yoon, 2011 WL 839421, at *3

11   (N.D. Cal. Mar. 7, 2011) ("Defendant's argument . . . was raised for the first time in her

12   reply brief.  As a result, it is improper for the Court to consider it.").

13       Second, even if the court were to consider the handbook, it does not change the

14   court's analysis with respect to either the statute or the interpretive bulletin.  The

15   handbook states that "certain fringe benefits, such as . . . holiday pay" may be excluded

16   "provided (1) they represent bona fide fringe benefits, (2) they are the cash equivalent of

17   such benefits, and (3) there is a clear understanding between the employer and

18   employees that the payments are in lieu of such fringe benefits."  Dep't of Labor, Wage &

19   Hour Division, Field Operations Handbook, ch. 32, § d03h,

20   https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-32#B32d03h (Nov.

21   17, 2016).  The handbook further provides that such payments "may be found in certain

22   industries such as the construction industry where the employee usually is employed by

23   more than one employer during the year" and the payments are made "in cash on each

24   payday."  Id.  Those descriptions are factually distinct from the holiday-in-lieu pay

25   described in the FAC and the handbook is not persuasive as applied here.

26       In sum, interpretive bulletins are "entitled to respect" under Skidmore, 323 U.S. at

27   140, but only to the extent they have the "power to persuade."  This case presents a

28   close question, but the firefighter example is not persuasive as applied to the facts of this

United States District Court
Northern District of California

case.  At the pleading stage, plaintiff only needs to allege facts to plausibly state a claim for relief.  As put best by the district court in <u>Lewis</u>, 2018 WL 1605754, at *3, "[o]n this record, it is at least as plausible that [firefighters] are compensated biannually for the inconvenience of working a schedule in which they are not entitled to holidays off as it is that they are for 'occasional periods when' they are 'not at work due to . . . holiday."  The court will therefore deny defendant's motion.

### 4.      Requests for Judicial Notice

Both parties have filed requests for judicial notice of a variety of documents.  Dkts. 23, 25.  Plaintiff requests the court take notice of various orders, briefs, and transcripts of proceedings from other district court cases, as well as a letter to DOL from the International Municipal Lawyers Association concerning DOL's rulemaking, and the 1999 DOL opinion letter.  Dkt. 23 at 2–3.  Defendant requests the court take notice of the U.S. Bureau of Labor Statistics' operational handbook, DOL's Field Operations Handbook, the 2006 DOL opinion letter, and briefs, transcript of proceedings, and a complaint from a district court case.  Dkt. 25 at 2.  Plaintiff has filed an opposition to defendant's request for judicial notice, Dkt. 28, and defendant filed a request to file supplemental briefing to respond to plaintiff's opposition, Dkt. 30.

Plaintiff states that the basis for his opposition is Civil Local Rule 7-3(d)(1) and Federal Rule of Evidence 201(e).  Dkt. 28 at 1.  Civil Local Rule 7-3(d) provides that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval" except an objection to reply evidence or a statement of recent decision.  Federal Rule of Evidence 201(e) states: "On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed."

Plaintiff's opposition suffers from several defects.  First, to the extent he opposes the request for judicial notice, as opposed to newly submitted evidence in the reply brief, then both Civil Local Rule 7-1(d) and Rule 201(e) require leave of court to file such an opposition.  No leave was sought.  Second, to the extent he objects to new evidence in

United States District Court
Northern District of California

1    the reply, then no leave of court was required, but the objection "may not include further

2    argument on the motion." Civ. L.R. 7-1(d). The opposition (or objection) includes further

3    argument, asserting that the DOL handbook is not subject to deference. Dkt. 28 at 4.

4           Third, plaintiff objects to the fact that defendant's reply brief contains newly raised

5    arguments. Yet, the evidence in support of these new arguments is not in the reply; it

6    was introduced by the request for judicial notice. The only merit to plaintiff's argument is

7    that the reply brief raises new legal arguments relating to the DOL handbook that were

8    not raised in its motion. But, legal arguments do not fall within the scope of reply

9    evidence and the court has already clarified that it will not consider defendant's newly

10   raised argument.

11          Plaintiff has failed to provide a compelling reason under Federal Rule of Evidence

12   201 why the facts sought to be noticed by defendant cannot "be accurately and readily

13   determined from sources whose accuracy cannot be reasonably be questioned." Fed. R.

14   Evid. 201(b)(2). Under that standard, courts routinely notice the type of publicly available

15   government documents that defendant seeks to notice. In fact, plaintiff recites that very

16   standard in its own request for judicial notice. See Dkt. 23 at 3 (citing DiRuzza v. Cnty. of

17   Tehama, 206 F.3d 1304, 1310 n.3 (9th Cir. 2000)); see also McKinnon, 2018 WL

18   6601900, at *2 (noticing DOL opinion letters and DOL field operations handbook).

19   Indeed, defendant provides hyperlinks in its request for judicial notice to confirm that the

20   portions of the handbook on which it relies come from a publicly available government

21   source whose accuracy cannot be questioned. Whether or not the handbook is

22   persuasive or owed any deference is a matter entirely separate from whether it is

23   judicially noticeable. For that reason, defendant's request to notice public filings before

24   other courts are also properly noticeable. See Shaw v. Hahn, 56 F.3d 1128, 1129 n.1

25   (9th Cir. 1995) (citation omitted).

26          Accordingly, the court OVERRULES plaintiff's objection, DENIES AS MOOT

27   defendant's request for supplemental briefing, and GRANTS both parties' requests for

28   judicial notice.

**CONCLUSION**

For the reasons stated, the court DENIES defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: December 23, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge